UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA



ADVOCATE FINANCIAL, L.L.C.

VERSUS

KENT MERCIER AND MERCIER
LAW OFFICES

CIVIL ACTION

NO. 08-696-JVP-DLD

# RULING

This matter is before the court on an unopposed motion for summary judgment by plaintiff, Advocate Financial, L.L.C. (doc. 107). Jurisdiction is based upon 28 U.S.C. § 1332. There is no need for oral argument.

In compliance with Local Rule 56.1, plaintiff has submitted the following "statement of uncontested material facts" (doc. 107-7), none of which have been controverted by defendant, Kent Mercier, in accordance with Local Rule 56.2 and are, therefore, deemed admitted:

1. Advocate has loaned money to defendants, Kent Mercier and Mercier Law Offices,[1] and their clients to find litigation expenses.

2. The loans are in default.

3. On September 1, 1998, Mercier and the Firm, along with Advocate, executed a "Commitment Letter."

---

[1] On April 1, 2009, a judgment of default was entered in favor of plaintiff and against defendant Mercier Law Offices (doc. 78).

4. The Commitment Letter contemplated a comprehensive lending arrangement pursuant to which, among other things, (1) Advocate would extend financing to the Firm and its clients under certain specified credit facilities to fund reasonable litigation expenses; (2) Mercier and the Firm would grant to Advocate a security interest in various collateral, including the Firm's future fees and accounts receivable; and (3) Mercier and the Firm would guarantee the various debts of the Firm and/or its clients.

5. On September 2, 1998, as contemplated by the Commitment Letter, Mercier and the Firm, along with Advocate, executed a written agreement entitled "Loan Agreement for 'Client Costs Facility and Line of Credit' and Special Case Funding" (the "Master Loan Agreement").

6. The 1998 Master Loan Agreement established the comprehensive arrangement pursuant to which, among other things, (1) Advocate would extend financing to the Firm and its clients under certain specified credit facilities to fund reasonable litigation expenses; (2) the Firm and Mercier would grant to Advocate a security interest in various collateral, including the Firm's future fees and accounts receivable; and (3) the Firm and Mercier would guarantee the various debts of the Firm and/or its clients. The credit facilities contemplated by the 1998 Master Loan Agreement included a line of credit to the Firm, separate individual loans to the Firm, and loans directly to the Firm's clients.

7. On September 2, 1998, as further contemplated by the Master Loan Agreement, Mercier, in his individual capacity, executed a Security Agreement with Advocate.

8. Under the terms of the 1998 Mercier Security Agreement, Mercier granted to Advocate a security interest in a wide variety of collateral, including but not limited to Mercier's (1) future fees received; (2) right, title, and interest in and to any and all employment and retainer contracts; (3) right, title, and interest in any and to all costs advanced to Mercier's clients; (4) accounts receivable; (5) depository accounts; and (6) accounts. The security interest granted in the 1998 Mercier Security Agreement was and is continuing in nature and secures then-existing and future indebtedness of Mercier to Advocate, specifically including, but not limited to, any extension, renewal, or replacement of credit granted by Advocate, as well as loans and advances made to Mercier, the Firm, and/or its clients.

9. The security interest granted under the 1998 Mercier Security Agreement is

evidenced by UCC-1 financing statements, duly recorded, continued from time to time in accordance with the law, and on file with the Louisiana Secretary of State.

10. On September 2, 1998, as further contemplated by the 1998 Master Loan Agreement, Mercier executed a Commercial Guaranty in favor of Advocate.

11. Under the terms of the 1998 Mercier Guaranty, Mercier, individually, guaranteed the performance and satisfaction of all sums due to Advocate by Mercier, the Firm, and/or its clients. The 1998 Mercier Guaranty was, by its express terms, continuing in nature and applicable to then-existing and future indebtedness of Mercier, the Firm, and/or its clients to Advocate.

12. Moreover, the terms of the 1998 Mercier Guaranty expressly permitted Advocate, upon the default of any debt owed to Advocate by Mercier, the Firm, and/or its clients, to collect from Mercier, individually, all debts then-outstanding and owed to Advocate by Mercier, the Firm, and/or its clients.

13. On April 1, 2006, the Firm, Mercier, and Advocate entered into a Master Loan Facility Agreement that provided for the continued extension of credit to the Firm and its clients, secured by the Firm's fees and guaranteed by both the Firm and Mercier.

14. On April 1, 2006, as contemplated by the 2006 Master Loan Agreement, Mercier, individually, executed an Individual Guaranty Agreement in favor of Advocate.

15. Under the terms of the 2006 Mercier Guaranty, Mercier guaranteed the performance and satisfaction of all sums due to Advocate by the Firm and/or its clients. The Mercier Guaranty is, by its express terms, continuing in nature and applicable to then-existing and future indebtedness of the Firm and/or its clients to Advocate.

16. Moreover, the terms of the 2006 Mercier Guaranty expressly permitted Advocate, upon the default of any debt owed to Advocate by the Firm and/or its clients, to collect from Mercier, individually, all debts then-outstanding and owed to Advocate by the Firm and/or its clients.

17. On October 20, 2006, as contemplated by the 2006 Master Loan Agreement, the Firm executed a promissory note, payable to Advocate, in the principal amount of $1,165,937.30.

18. Under the terms of the October 2006 Note, the Firm agreed to pay interest to Advocate at a rate of 15.5% per annum from the date of the Note until the date of full repayment of all sums due under the Note. The Firm also agreed to pay the full amount of the principal, interest, and any other charges due under the terms of the Note upon demand by Advocate or, if no demand is made, to pay Advocate such amounts on or before the Note's maturity date, December 20, 2007, whichever was earliest to occur.

19. Further, under the terms of the October 2006 Note, in the event it became necessary for the holder of the Note to employ an attorney to collect any sums due thereunder, the maker, the Firm, agreed to pay reasonable attorney's fees in an amount not exceeding 25% of the unpaid amount due under the Note.

20. Additionally, from time to time, as contemplated by the 1998, 2001, and 2006 Master Loan Agreements, defendants' clients executed promissory notes payable to Advocate, including, without limitation, the following notes: the Tremeka Jones Client Note, Ford Client Note, Frickey Client Note, Phillips Client Note, Girouard Client Note, Abraham Client Note, Vital Client Note, Veronie Client Note, Dronet Client Note, Mobley Client Note, Grimes Client Note, Cal Jones Client Note, Cope Client Note, Thibodeaux Client Note, Johnson Client Note, Baye Client Note, Nolan Client Note, Casey Client Note, Second Girouard Client Note, Cormier Client Note, Domino Client Note, Caro Client Note, Mayers Client Note, Thibodeaux Client Note, and Breaux Client Note.

21. Under the terms of each Client Note, in the event it became necessary for the holder of a Client Note to employ an attorney to collect any sums due thereunder, the maker, the borrower, agreed to pay reasonable fees in an amount not exceeding 25% of the unpaid amount due under the Client Note.

22. On April 8, 2008, defendants executed an "Acknowledgment and Release" (attached to plaintiff's complaint as exhibit 42) in which they acknowledged their indebtedness to Advocate, including, without limitation, their indebtedness to Advocate under the 1998, 2001, and 2006 Agreements, the October 2006 Note, and the Client Notes, and further acknowledged that defendants had no defenses to any collection on the loan documents.

23. Also, on April 8, 2008, Mercier, individually, the Firm, and Advocate signed a Forbearance Agreement.

24. The October 2006 Note matured on December 20, 2007, and is due. In the Forbearance Agreement, defendants acknowledged that they have failed to pay the principal and interest due under the October 2006 Note in accordance with its terms, that they are obligated on the October 2006 Note, and that they have no defenses to payment of same. Defendants have further breached the Forbearance Agreement, entitling Advocate to exercise all remedies available to it under the Loan Documents.

25. As a result of the foregoing, and in accordance with the terms of the October 2006 Note, the 1998, 2001, and 2006 Agreements, Advocate is entitled to recover from Mercier and the Firm all sums due Advocate under the October 2006 Note, including principal, interest, reasonable attorneys' fees, and all costs of these proceedings.

26. Defendants have breached the Forbearance Agreement by receiving a reimbursement for costs or other funds advanced to or for the benefit of a client without depositing said sum into the Control Account.

Though several of the foregoing *admitted* "facts" border on conclusions of law, the court nevertheless agrees. Moreover, the court interprets defendant Mercier's failure to oppose the motion as an acknowledgment of the correctness of the arguments made in plaintiff's memorandum in support (doc. 107-6). Accordingly, for the reasons stated therein, the motion (doc. 107) is hereby **GRANTED**.

Baton Rouge, Louisiana, July \_\_\_\_, 2009.

JAMES J. BRADY, JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA